# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4551 | **DATE** | 2/6/2003 |
| **CASE TITLE** | MINUTI vs. JOHNSON, ET AL | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (62-1) to dismiss is granted/denied in part. Counts VII, VIII, XI, XII of the second amended complaint are dismissed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| DW | courtroom deputy's initials | |

Document Number

FEB 11 2003

date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

U.S. DISTRICT COURT
CLERK

03 FEB 10 PH 3: 04

Date/time received in central Clerk's Office

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DENNIS P. MINUTI,

      Plaintiff,

      v.

SCOTT B. JOHNSON and THE
MASTERS' PORTFOLIO, LTD., an Illinois
corporation,

      Defendants.

---

SCOTT B. JOHNSON and THE
MASTERS' PORTFOLIO, LTD., an Illinois
corporation,

      Counter-plaintiffs,

      v.

DENNIS P. MINUTI,

      Counter-defendant.

No. 02 C 4551
Judge James B. Zagel



DOCKETED
FEB 1 1 2003

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Dennis Minuti is a buyer and collector of art. Among the works he owns are

many pieces that have not yet been attributed to the various artists believed to have authored

them. Defendant Johnson is an art consultant and dealer who purports to specialize in the

attribution and authentication of art works that are not yet attributed to certain artists, and

defendant Masters' Portfolio is his company. In November 1994 and in several subsequent

conversations, Minuti contacted defendants, eventually engaging them to begin attribution efforts

of his collection, and defendants took possession of some works. Over the next several years, the

relationship soured with each side alleging that the other was not performing its obligations, among other complaints. Eventually, the parties reached a standstill with defendants ceasing work and retaining the pieces and Minuti refusing to pay for services which defendants claimed to have performed. Minuti then filed suit against the defendants asserting various contract and tort claims.

Defendants move to dismiss certain claims. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 586 (7th Cir. 1989). In reviewing the motion, I "must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them" and dismissal is appropriate "only if the plaintiff has failed to allege any set of facts upon which relief may be granted." *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir. 1990).

Count II: Declaratory Relief

Defendants argue that this count should be dismissed because defendants have a valid lien interest over Minuti's collection on four alternative bases: (1) a 1995 note and security agreement; (2) a 2000 note and security agreement; (3) a common law artisan's lien; and (4) a statutory lien. I reject all four bases. First, Minuti has pled that the 1995 note and security agreement has been fully paid and retired and that his signatures on the 2000 note and security agreement are forgeries. Because I must assume these facts to be true, they render both notes invalid bases for a lien. Second, although Illinois law recognizes a common law artisan's possessory lien in favor of a bailee who, at the request of a bailor, does work upon or adds material to a chattel, *see Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284 (7th Cir. 1985) (citing Restatement of Security § 61), "[t]here is no lien for intellectual labor although it may

2

have been wholly confined to the chattel as a subject," *see* Restatement of Security § 61. Therefore, the common law is also an invalid basis for a lien interest.

Finally, defendants turn to the Illinois statutory lien on chattels for labor, which arises in favor of any person who "expend[s] labor, skill or materials upon any chattel" at the request of its owner. 770 ILCS 45/1. In contrast to defendants' assertion to the contrary, the statute does differentiate between types of labor. In order for the statute to apply, labor must be expended *upon the chattel* and not merely in relation to or in connection with it. Here, Minuti relinquished part of his collection to the defendants for the purpose of attributing and appraising those pieces, but this work does not constitute expending labor on the pieces themselves. Unlike the work of an auto mechanic on an engine, after which the engine has been affected somehow (hopefully for the better), Minuti's pieces are wholly unaffected by the work of the defendants in allegedly attributing or appraising them. In the specific context of art, declaring a piece to be the creation of a certain author or estimating its value cannot be said to be labor on the work itself in the same way that restoring or preserving the piece is. In sum, the alleged work of the defendants cannot be said to have been done on the collection itself, and therefore, the statutory lien is inapplicable. Thus, in the absence of any valid lien, there is a properly pled claim for declaratory relief that I will not dismiss.

<u>Count V: Fraudulent Inducement</u>

Citing *Havoco of America, Ltd. v. Sumitomo Corp. of America*, 971 F.2d 1332, 1341 (7th

Cir. 1992), defendants argue that Minuti fails to plead damages as an element of the fraudulent

inducement claim. While *Havoco* holds that damage must be proven by clear and convincing

evidence, nothing in *Havoco* requires such evidence to be pled in a complaint. On the contrary,

Minuti need only plead all of the required elements of the claim. Each of these elements,

including damages, are pled as such. Furthermore, Federal Rule of Civil Procedure 9, while

requiring allegations of fraud to be stated with particularity, does not require particularity as to

the element of damages. *See, e.g., Smith v. Short Term Loans*, No. 99 C 1288, 2001 WL 127303,

at *6 (N.D. Ill. Feb. 14, 2001) ("particularity is not required as to damages . . . where the facts

alleged are sufficient to put the defendant on notice of the who, what, where, when, and how of

the misleading practice."). And although it is true that mere conclusory allegations of damages,

without any factual basis, are not sufficient to withstand a motion to dismiss, Minuti's allegation

of suffering damage is based on the alleged fact – which I must accept as true – that  Johnson

made various false representations to him at a January 12, 2001 meeting. It is not a stretch to

infer that damages resulted from such representations. *See Juno Online Services v. Juno

Lighting, Inc.*, 979 F.Supp. 684, 690 (N.D. Ill. 1997).[1]

---

[1] Interestingly, I get the impression that if the plaintiff in *Juno* had alleged that its domain name "juno.com" was suspended, its claim that it had been "injured" or "suffered damages" could have withstood a motion to dismiss, not because of any particularity as to what damages or injuries it suffered but because such injuries or damages would have been based on the fact that the domain name was suspended and thus damages could have been reasonably inferred as resulting from such a suspension. *See id.* at 690. This is all that is required under Rule 9.

<u>Count VI: Injunctive Relief</u>

Defendants move to dismiss this count because, they argue, it fails to establish a cause of action for a preliminary injunction. However, this count is a claim for permanent injunctive relief. Therefore, defendants' basis for dismissal is completely irrelevant, and I will not dismiss this count.[2]

<u>Count VII: Negligence</u>

Among other objections, defendants argue that the economic loss or *Moorman* doctrine prevents recovery for this count. Under Illinois law, a party cannot recover economic losses under a tort action for an alleged breach of contract. *Ruscitti v. Atchison, Topeka, and Santa Fe Railway Corp.*, 987 F.Supp. 1039, 1042 (N.D. Ill. 1997). This doctrine bars tort recovery for plaintiffs who incurred solely economic losses. In *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982), the court defined "economic loss" as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property." The court also held that a "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence," while the remedy for economic loss lies in contract. *Id.* The *Moorman* doctrine is premised upon the theory that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property, but contract law offers the appropriate remedy for economic losses occasioned by diminished commercial expectations. *In re Chicago Flood*

---

[2] In their reply memorandum, defendants raise the additional arguments that this claim for injunctive relief is moot. I will not consider this argument because it was not discussed in their initial memorandum in support of the motion, and thus Minuti did not have a chance to respond.

*Litigation*, 680 N.E.2d 265, 275 (Ill. 1997). The proper test for distinguishing between recovery in tort and contract damages (economic losses) depends upon the nature of the defect and the manner in which the damage occurred. *Moorman*, 435 N.E.2d at 449. To recover in tort, there must be a showing of harm above and beyond disappointed expectations. *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 327 (Ill. 1982). A purchaser's desire to enjoy the benefit of his bargain is not an interest that tort law protects. *Id.* The remedy for economic loss, relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, lies in contract. *Moorman*, 435 N.E.2d at 450-51. Thus, the economic loss doctrine bars recovery in tort under such circumstances regardless of the plaintiff's inability to recover in a contract action. *Anderson Elec. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 248 (Ill. 1986).[3]

Here, Minuti's appropriate action lies in contract and not tort. The essence of his claim is a breakdown in the agreement in which the defendants agreed to "attribute, authenticate, safeguard, insure, and assist with the later sale" of Minuti's collection in return for compensation from Minuti. All damage caused by this breakdown is monetary in nature, thus putting the dispute within the realm of the economic loss doctrine. Application of the doctrine is further appropriate because Minuti fails to fall within any of the doctrine's exceptions. First, the relationship of an art attributor to an art collector does not rise to that level of special professional relationship that would impose a duty of care regardless of the existence of a contract. *See In re Ben Franklin Retail Stores, Inc.*, 225 B.R. 646, 657 (Bankr. N.D. Ill. 1998); *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994). In addition, Minuti has not pled an intentional or negligent misrepresentation

---

[3] For this reason, Minuti's argument regarding alternative relief is irrelevant.

possibly warranting application of the exception for such statements. *Moorman*, 435 N.E.2d at 452. Therefore, the economic loss doctrine bars this claim.

Count VIII: Breach of Fiduciary Duty

Among other objections, defendants argue that Minuti has failed to establish the existence of a fiduciary relationship required to maintain this claim. "Under Illinois law, a fiduciary relationship is created when one party reposes trust and confidence in another who thereby gains a resulting influence and superiority over the first." *Del Angel v. Heidelberg Eastern, Inc.*, No. 01 C 8144, 2002 WL 1303132, at *3 (N.D. Ill. June 10, 2002). The relevant factors used in determining the existence of a fiduciary relationship include the "education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant party' and placed trust and confidence in it." *Gonzalzlez v. American Exp. Credit Corp.*, 733 N.E.2d 345, 354 (Ill. App. Ct. 2000). However, "most business relationships 'do not of themselves create fiduciary relationships.'" *Cognitest Corp. v. Riverside Pub. Co.*, No. 94 C 4741, 1994 WL 727980, at *4 (N.D. Ill. Dec. 30, 1994). Indeed, "parties to a contract are generally not each other's fiduciaries." *Id.* The essence of a fiduciary relationship is that one party is dominated by the other, but the mere "fact that one party places his trust in the other party is insufficient to create a fiduciary relationship." *Id.* Indeed, "[n]ormal trust between friends and businesses, plus a slightly dominant business position, do not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship." *Humana Health Plan, Inc. v. Heritage Indiana Medical Group*, No. 99 C 6276, 2001 WL 8878 (N.D. Ill. Jan. 3, 2001). Here, the relationship between Minuti and the defendants simply does not rise to the fiduciary level. Although defendants may be experts in their respective field and

7

although Minuti entrusted a substantial portion of his art collection to them, he did so in a manner that is no different than entrusting a malfunctioning auto to a car mechanic based on her technical expertise and ability to fix the problem. Just as that relationship is contractual and not fiduciary in nature, so the relationship here is contractual and not fiduciary. Therefore, I dismiss Count VIII.

## Counts IX and X: Conversion and Trespass to Chattels

Defendants argue that Minuti has not and cannot establish a prima facie cause of action for either conversion or trespass to chattels because he cannot establish two of the four prima facie elements required for each cause of action.[4] To state a prima facie cause of action for conversion or trespass to chattels, Minuti must establish the following elements: (1) defendants' wrongful assumption of control; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession; and (4) plaintiff's demand for possession. *Nelson v. Sotheby's Inc.*, 115 F.Supp.2d 925, 929 n. 2 (N.D. Ill. 2000). Defendants claim that Minuti cannot establish either their wrongful control or his immediate right of possession based on the purported existence of a lien over the collection, essentially the same argument discussed above in reference to Count II. Once again, defendants have not established such a lien, and thus I will not dismiss this count on that basis.

---

[4] Defendants' motion initially sought dismissal of Counts IX and X due to Minuti's purported failure to adequately plead damages, but defendants' subsequently filed memorandum in support of the motion does not deal with Counts IX and X in respect to damages. I assume this omission means that defendants no longer seek to dismiss Counts IX and X on this ground.

8

<u>Counts XI: Defamation</u>[5]

Among other objections, defendants argue that Minuti has not adequately alleged a

defamation claim because the statements at issue are pure opinions, which are not defamatory and

thus not actionable under Florida law.[6] *Morse v. Ripken*, 707 So.2d 921, 922 (Fla. App. Ct. 1998).

Whether a statement is pure opinion, or mixed opinion or fact is a question of law for the court.

*Id.* at 922. "Pure opinion is based upon facts that the communicator sets forth in a publication, or

that are otherwise known or available to the reader." *Hay v. Independent Newspapers, Inc.*, 450

So.2d 293, 295 (Fla. App. Ct. 1984). A mixed (and therefore actionable) statement of opinion and

fact, by contrast, "is based upon facts regarding a person or his conduct that are neither stated in

the publication nor assumed to exist by a party exposed to the communication. . . . Rather, the

communicator implies that a concealed or undisclosed set of defamatory facts would confirm his

opinion." *Id.* When determining whether a statement is pure opinion courts are directed to: (1)

construe the statement in the totality of the publication, not a mere phrase or word; (2) consider

the context in which the statement was published; (3) give weight to cautionary terms; (4)

consider the medium in which the statement was disseminated; (5) consider the audience to which

it was published; and (6) consider all other surrounding circumstances. *Id.*

Minuti alleges that defendants made defamatory statements about him to an individual

named Mitchell Feldman in a facsimile dated June 27, 2001. In that facsimile, Johnson declares

that Minuti was "neither honest nor truthful," that he was "scheming to remove works from Icon,"

---

[5] Minuti concedes to the dismissal of Count XII.

[6] Under Illinois choice of law rules, Florida law applies to the defamation counts because the statements allegedly were published and disseminated in Florida. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915-16 (7th Cir. 1995).

and that his "deceitful, spurious, hypocritical actions have wounded those around [him]." Finally, Johnson concluded that "you [Minuti] mentioned that Jesus entered your heart. Perhaps you should look again to make sure that it was not Judas." I must view this communication in the context of the ongoing dispute between the parties, and hence their ongoing series of communications. Aside from Minuti, the only party to the communication was Feldman, who apparently was receiving communication from defendants on behalf of Minuti. Therefore, the communication was not a widely disseminated publication. Indeed, it was just one person away from not being a publication at all. As for its contents, the facsimile itself sets out many of the facts that form the basis of defendant Johnson's remarks regarding Minuti. Furthermore, this facsimile was sent in response to one from Minuti to Johnson earlier that day and is just one in a series of various communications sent between the parties over a period of time. Such communications were often sent to Minuti in care of Feldman. In fact, some of these communications were directly addressed to both Minuti and Feldman. Finally, Feldman's parents' home was the site of a January 21 meeting between Minuti and defendants to discuss their souring business relationship. Therefore, based on his involvement in the ongoing communication and dealing between the parties, the facts underlying Johnson's alleged defamatory remarks were at least available to Feldman, if not actually known by him. As such, Johnson's comments constitute non-actionable opinion, and I dismiss this count.

For the aforementioned reasons, Defendant-Counter-plaintiffs' Motion to Dismiss Counts II, and V-XII of Plaintiff's Second Amended Complaint is GRANTED as to Counts VII, VIII, XI, and XII but DENIED as to Counts II, V, VI, IX, and X.

ENTER:

James B. Zagel
United States District Judge

DATE: 6 Feb 2003